Nash, I.
 

 The decision of this case rests, in our opinion, entirely upon the question, whether the letters testamentary, .•granted to the plaintiff by the County Court of Edgeconrb, are
 
 *269
 
 entirely void, or merely voidable. If the former, the plaintiff cannot maintain his action; if the latter, he can.
 

 The act of 1789, of our General Assembly, Rev. Stat. ch. 122, sec. 6, provides, “that all wills shall be proved in'the county, where the testator had h¡s usual place of residence at the time t)f his death and, on behalf of the defendant it is urged, that Theopbilus Hyman had no residence in this State, at the time of his death, and therefore no county in this .State had any original jurisdiction to take probate of his will. It is not denied, if the will had been first proved in Florida, where the testator died, agreeably to the laws of that Territory, that a copy of it, properly authenticated, might have been admitted to probate in this State, and, in that case, Edgecomb County Court would have had jurisdiction of the case, and letters testamentary issued by it, would be valid. We agree that this would have been the proper course. Though long a vexed question, it is now well settled in England, as well as in this country, that a will must be executed according to the law of the country, where the domicil was, at the time of the death of the
 
 testator. But
 
 as late as the year 1828, the contrary was holden by Sir John Nicholl, in the case of
 
 Curling against
 
 Thornton; and again, it was ruled by him in the case of
 
 Stanly against
 
 Barns, 3d Haggard Exc. Rep. 373. This latter case, however, settled the doctrine in England ; the opinion of Sir John Nicholl being overruled by the high court of delegates, upon appeal, and the doctrine fiilly established, that the law of the actual foreign domicil of a British subject is exclusively to govern in relation tp his testament of personal property, as it would in the case of a foreigner. The same doctrine was held in Pennsylvania, in the case of
 
 Desistat
 
 v.
 
 Berquins.
 
 1 Binney’s Rep. 336. That was the case of a foreign testator, domiciled abroad, disposing of property in that State. From the many adjudications in the American courts, it may, we presume, be considered the settled doctrine in this country.
 
 Holmes
 
 v.
 
 Remsen,
 
 4 John.
 
 C. R.
 
 469.
 
 DeSobry
 
 v.
 
 DeLaistre,
 
 2 Harris and Johnston’s Rep. 224,
 
 Dixon's Ex'ors.
 
 v.
 
 Ramsay's Ex’ors.
 
 3 Cranch.
 
 *270
 
 319. There is, then, a manifest propriety in submitting th® will in the first instance to the forum of the domicil at the time of the death, but we can find no case deciding that course ¡0 be absolutely necessary. In the case,
 
 Larpent against
 
 Lindsy, 1 Haggard, 382, decided in 1828, certain papers of a testamentary character were left
 
 by
 
 Thomas Barnes, who died in India. These papers were proved there as his will, and, exemplification of the probate in India being transmitted to England, amotion was submitted in the Prerogative Court of Canterbury, where there were
 
 bona noiabilia
 
 of the deceased, for administration with the exemplified copies of the papers annexed, as the will of Thomas Barnes. Sir John Nicholl, after observing that the probate in India was not exactly according to the English practice, proceeds : “ But the court in India, which, as the deceased died domiciled there, is a court of competent jurisdiction, has considered them as a will and codicil, and this court is
 
 perhaps
 
 bound to follow it. The question, how far this and other courts of probate are to be governed fey the decision of the court of probate, where the deceased was domiciled, has never been expressly decided.” He then observes, it is the general practice, and he should not depart from it, unless in a strong case of inconvenience. In •the opinion then of Sir John Nicholl, the practice of proving the will, first, in the forum of the foreign domicil, may, in a strong case of inconvenience, be departed from, and, as 1 understand him, the probate be first had in the jurisdiction, where
 
 bona noiabilia
 
 are found. But though the will be proved, or letters of administration be granted, where the foreign domicil was, yet they confer upon the executor and the administrator, no rights, beyond the territory of the government where granted. Any right, which they may enjoy beyond such limits or jurisdiction, is not
 
 da
 
 jure, but conventional and depending upon the comity of nations; or rather, is acknowledges!
 
 ex comitate.
 
 Every nation has a right to prescribe the mode in which it shall be enjoyed, and no nation is bound to enforce foreign laws, prejudicial to the rights of its citizens. Hence it is the doctrine of the common law, that no
 
 *271
 
 suit cari be brought by an executor or administrator upon foreign letters, 1st Will. Ex. 205. He must apply to the proper court of the country, where the action is to be brought, and obtain there letters'of administration or testamentary, and his right to do so is considered as a matter of course. In this State,- the court of probate in such a case does not en-quire into the validity of the will, but looks alone to the probate; and,-upon being satisfied upon that point, directs letters to issue to the executor or administrator, as the case may be.
 
 Helme
 
 v. Saunders, 3d Hawks, 563.
 

 The law will
 
 not
 
 permit a foreign administrator or executor to collect the assets, because it is the duty of the government to take care of its own citizens — -and their fight would be materially injured by permitting actions to be brought,-or recognizing foreign letters, as the assets might be carried beyond the limits of the State,- and beyond the reach of the creditors. This new administration, however, is but ancillary to the original, and imposes upon the executor or administrator the obligation to pay over, when they are obtained by different persons from the executor or administrator of the domicil, whatever of the assets may remain, after discharging the debts and legacies, due to persons resident within the country where obtained.
 
 Harvey
 
 v.
 
 Richards,
 
 Masons Re. 381. Story’s Conf. of Laws, 423. In the case from. 3 Hawks, Judge Henderson observes, that the court were of opinion, that when a probate was obtained in a sister State, and was authenticated as the laws of the United States direct, it is, under th® constitution of the United States, in such an authentic form, as to supercede the necessity of any probate in the courts of this State, and that such an authentication may be given in and sustain a suit. Be this, however, as it may, either new letters must be obtained in this State, in such a ease, before an administrator or executor can sue in our courts,, or he must produce his letters, so authenticated in another State, and either, according to Judge Henderson’s opinion,will answer. The power of our county courts to grant letters testamentary or of administration, where a person has died beyond the State,
 
 *272
 
 • being domiciled there, is fully established by the case
 
 of Smit
 
 h
 
 against Munroe,
 
 and others, 1 Ired. 345, and that the county, where
 
 bona notabilia
 
 of the testator or intestate are found, is the proper tribunal to grant them. This can fully answer the verbal objection as to the letters in the present case, grow* ing out of the language of our act concerning probates. The-ophilus Hyman had been a merchant in Edgecomb county, and, at the time of his death, had many debts due to him in that county. These debts so due constituted
 
 bona notabilia,
 
 and gave to the county ofEdgecomb power to take probate oí the will in some way, as by ordering the letters granted in another State to be recorded and new letters to issue.
 
 Owings
 
 v.
 
 Ulery,
 
 4 Bibb. 450, and
 
 Carmichael
 
 v.
 
 Elmendorf, and others,
 
 4 Bibb. 484. The question then returns, are the letters testamentary granted to the plaintiff void ? If so, he is not the executor of the will oí Theophilus Hyman, and cannot support the action. If, however, the letters are merely voidable, the defendant cannot avail himself of his plea of
 
 ne unques executor.
 
 Mr. Chitty, 1st vol. of pleading 486. states that when letters testamentary have been granted by an
 
 inferior
 
 diocese, the defendant may plead
 
 ne unques executor,
 
 and give in evidence the fact that there were
 
 bona notabilia
 
 — and why could he do so ? Because the probate'was void as granted by an incompetent authority. Toller 120, and cases there cited. The proper person before whom, according to the law of England, a will is to be proved, is the ordinary of the place where the testator dwelt, that is, generally, the Bishop of the diocese j and, if all his goods lie within that diocese, the probate before the Bishop thereof, or his proper officer, is the only proper one — but if he have
 
 bona notabilia,
 
 lying within that diocese, and some other, then the probate must be had before the metropolitan of the province in consequence of his special prerogative, and, if otherwise granted, it is void, because of the want of jurisdiction. 1st Will. on Ex’rs. 167. It is sometimes difficult to distinguish between
 
 such
 
 acts or judgments of a court, as are void, and such as are merely voidable; but it may be safely said in reference to granting letters testamentary or
 
 *273
 
 of administration, that, if, under any circumstances, the court of probate could grant them, then it would have jurisdiction of the subject and its act is not void — if, on the contrary, in no possible state of things, it could grant the letters, then are they void and convey no authority to any one to act under them. Thus it has been decided in this State, that when a citizen of North Carolina dies, letters of administration granted by the court of a county, where he never resided, nor had any assets at the time of his death, were absolutely void, being a mere nullity.
 
 Collins v.
 
 Turner, N. C. Term, R. 105. So if administration be granted before probate or refusal, or where there are two executors, and one proves the will and dies, and administration is granted before the refusal of the survivor, subsequent
 
 to the
 
 death of his co-executor — in all these cases the administration is not simply voidable, but absolutely void, because in neither case could the ordinary by any possibility, while the facts so continued, have authority or power to grant administration. Toller 120. But where he has, in the particular case, a right to act, then his act may be voidable, but is not void; he has the jurisdiction of that particular case. He may mistake his duty, or act upon insufficient testimony; what he does may be wrongly done, but it is not a nullity. As if he grant letters of administration to a wrong person, or if he grant it,
 
 non vocatis,jure vocandis.
 
 This doctrine is treated by Chief Justice Marshall, in his usual clear and forcible manner, in the case of
 
 Griffith
 
 v. Frazier, 8th Cranch. 5, in which he had occasion to examine the doctrine of void and voidable letters of administration. The case, so far as this point is concerned, was shortly as follows: A man by the name of Salvador, a citizen of South Carolina, made his will and appointed three individuals executors. Two of them were out of the State, and Da Costa, the third, had the will proved, and qualified as executor. He afterwards left the State, and, while he was alive, administration with the will annexed was granted to one La-moth, and the question was, whether the letters to the latter were void. The Supreme Court ruled them to be so, because,
 
 *274
 
 in no possible state of things, during the life of Da Costa, 'could the ordinary grant letters of administration ; his letters testamentary to him had exhausted his power. Let us test this case by the principles established. Theophilus Hyman died in Florida, a foreign government. According to the rules of the English courts, his will ought to have been proved there, in the first instance, and, if the executor wished to collect the assets in this State, he ought to have procured a copy, duly authenticated, and upon presenting that before the proper court of probate in this State, have it proved and deposited as if it were the original,- and, upon such probate, obtained letters testamentary. 1 Will. on Ex. 205. Toller, 70. Under some circumstances, then, to wit, such as Mr. Williams points out, the court of probate in this State, where there were
 
 bona notabilia,
 
 might grant letters testamentary. If it be correct as stated by Judge HendeRson, that, in such case, out court of probate goes into evidence of the fact only of the foreign probate, and, if satisfied of that fact, grants letters testamentary, that is, gives documentary evidence, which our courts recognize as genuine, then the result is,- that the court of Edgecomb county has granted letters testamentary,- not in a case, in which they had' no jurisdiction,-but upon improper and mistaken testimony. Instead of requiring a copy, duly authenticated under the laws of Florida, to be filed among their records, as evidence complete of the existence of the will, they have caused the original to be proved and filed, and upon that have granted letters testamentary. It is to be regretted, that the court has unadvisably pursued this course. A proper respect for the laws and institutions of Florida should-have led to the adoption of the accustomed mode. It is an unnecessary departure from that comity, which ought ever to exist between the courts of different nations. We cannot", however, therefore declare the letters granted by that court void. Nor do we perceive any serious mischief or inconvenience, likely to ensue from sustaining the letters. It was absolutely necessary, in order to collect and secure the assets, and to pay the creditors and legatees of the testator, if there were
 
 *275
 
 any such in this State, that letters testamentary should be issued from some authority here. And though this appointment is only ancillary to the one to be made in Florida, yet, so far as the assets in this State are concerned, it is plenary to every purpose. It will be the duty of the executor to take the will to Florida and have it proved there according to the laws of that State; otherwise, he may subject himself to a
 
 devas-tavit. Helme
 
 v.
 
 Saunders,
 
 3d Haw. 563. Nor is the defendant materially interested in the determination of this question. The jury by their verdict have said he owes the money, and it must be to him a matter of indifference to whom he pays it, provided, when he does so, it shall be to him an effectual discharge, and that, if paid under the judgment in this case, he will be protected, is very certain; the letters testamentary being granted by a court of competent authority and having jurisdiction, and binding upon all other courts both of law and equity, until duly and properly repealed, 1st Will. on Ex’rs. 340. If, however, the grant of letters be void, all the acts of the executor done under them are void, so far as the rightful executor is concerned. Thus in
 
 Graysbrook against Fox,
 
 Plowden, 276,
 
 1st
 
 Will. Ex’rs. 368, administration having been granted by the ordinary, before the executor had proved the will, was declared void, and the administrator having sold some of the goods of the testator to the defendant, the plaintiff (the executor) sued him in detinue for them and recovered, because the letters of administration were void. With respect to payments, however, made
 
 to
 
 an executor or administrator by a debtor of the estate, the rule is different. If the grant be made by a court of competent jurisdiction, whether the letters be void or only voidable, a
 
 bona fide
 
 payment of a debt due to the estate, will be a discharge to a debtor. In
 
 Allen
 
 v.
 
 Dundass,
 
 3 Term, 125, it was held, that a payment made to the executor of a forged will, who had obtained probate of it, the supposed testator being dead, was a valid discharge to the debtor, although the probate was afterwards declared null, by the Ecclesiastical Court; on the principle, says Mr. Williams, 1st vol. 371, that, if the executor had brought suit against the
 
 *276
 
 debtor, the latter could not have controverted the title of the executor, as long as the probate was unrepealed, and the debt- or was not obliged to wait for a suit, when he knew no defence could be made to it. See
 
 Woolly
 
 v.
 
 Clark,
 
 5 Barn. and Ald. 746.
 
 Phillips against Byron,
 
 1 Sh. 509.
 
 Appeal of R. Peebles,
 
 13 Serg. & Rawle, 39. There cannot then be a doubt, that a payment by the defendant to the present plaintiff, made either voluntarily or under process of law, would be to him a full discharge.
 

 It is to be observed, that it does not appear that the will was offered for probate and admitted, as the will of a citizen of Florida, and not as the will of a citizen of North Carolina.
 

 Pkr Curiam,. Judgment affirmed.