IN THE MATTER OF THE ESTATE OF: J. DANIEL SEVERT, DECEASED

No. COA08-203

(Filed 16 December 2008)

**Estates— letters of administration—grounds for revocation—domiciliary administration in another state**

Valid letters of administration of an estate issued by a clerk of superior court could be revoked only pursuant to the statutory grounds set forth in N.C.G.S. § 28A-9-1(a), and the establishment of a domiciliary estate in Virginia was not a proper ground for the revocation of one co-administrator's letters of administration in an action brought by decedent's sister.

Appeal by respondent from an order entered 31 August 2007 by Judge Edgar B. Gregory, Jr. in Ashe County Superior Court. Heard in the Court of Appeals 27 August 2008.

*Allman Spry Leggett & Crumpler, P.A., by R. Bradford Leggett, for petitioner-appellee.*

*Parker Poe Adams & Bernstein L.L.P., by William L. Rikard, Jr. and Michael G. Adams, for respondent-appellant.*

JACKSON, Judge.

Edward F. Greene ("Greene") appeals the trial court's reversal of the order of the Clerk of Ashe County denying dismissal of domicil-

IN RE ESTATE OF SEVERT

[194 N.C. App. 508 (2008)]

iary administration of the Estate of J. Daniel Severt ("the estate") in Ashe County. For the reasons stated below, we reverse.

J. Daniel Severt ("decedent") died intestate on 21 May 1998. On 1 June 1998, an agreement regarding the administration of decedent's estate was entered into, in which the following individuals were named as co-administrators of the estate: (1) Greene; (2) Thomas Severt ("Severt"), decedent's brother; (3) Mary Severt, decedent's sister-in-law; (4) Mary S. Yearick ("Yearick"), decedent's sister; and (5) Christopher D. Lane ("Lane"), Greene's and decedent's attorney. As it was unclear at that time whether decedent was legally domiciled in North Carolina or in Virginia, it was agreed that the domiciliary, or original, administration of the estate would be in Ashe County, North Carolina, with an ancillary administration in Virginia.

Letters of administration were issued on 2 June 1998 in Ashe County, North Carolina. On 24 July 1998, a Certificate/Letter of Qualification was filed in Roanoke County, Virginia qualifying the five North Carolina co-administrators, as well as Frank W. Rogers, Jr. ("Rogers"), of Virginia, as co-ancillary administrators of the estate. On 27 January 1999, the Virginia administrators were converted from co-ancillary administrators to co-domiciliary administrators in Virginia.

On 28 January 1999, all six co-administrators of the Virginia estate applied to the Roanoke County Commissioner of Accounts for payment of commissions at five percent (5%) or greater of the receipts and disbursements of the estate. The Commissioner of Accounts informed them that he was not authorized to approve such fees and that "the estate itself had to make the decision on the fee arrangement." Between 16 and 24 February 1999, a total of $7,850,000.00 in commissions was paid to the co-administrators from the estate.

On or about 22 July 1999, an annual accounting was filed in Ashe County, North Carolina listing total estate assets of $103,105,215.78 and total disbursements of $56,564,210.43, including administrator commission disbursements totaling $7,850,000.00, $1,570,000.00 of which was paid to Greene. The accounting was audited and approved on or about 11 August 1999. On 3 November 1999, an estate inventory was filed in Virginia stating the total estate assets were $101,218,941.00. No subsequent accountings were filed in either North Carolina or Virginia until 2006

IN RE ESTATE OF SEVERT

[194 N.C. App. 508 (2008)]

On or about 23 August 1999—after the filing of the North Carolina accounting, but before the filing of the Virginia accounting— estate tax returns were filed in both North Carolina and Virginia. A federal estate tax return also was filed. Decedent's Virginia gross estate was reported as $101,578,059.00, with .002447 percent attributable to assets located outside Virginia. The North Carolina gross estate was reported as $248,605.00. The federal gross estate was reported as $101,578,059.00, $248,605.00 of which was attributable to North Carolina.

The estate's federal tax return was audited by the Internal Revenue Service in 2002. As a result, a negotiated settlement was reached pursuant to which, *inter alia*, the deduction for aggregate executor commissions was reduced from $7,850,000.00 to $3,950,000.00. Because of the changes made to the federal estate tax return, additional taxes became due. Pursuant to a 31 May 2002 agreement entered into between all co-administrators except Yearick— who was not immediately available—Greene tendered to the estate $59,670.00, representing his proportional share of the increased federal estate taxes due. A federal estate tax closing letter was issued on 27 June 2002, effectively closing the account. The North Carolina Department of Revenue issued a certificate on 9 May 2003 indicating that any North Carolina inheritance and estate tax liability had been fully satisfied.

The 31 May 2002 agreement was mailed to Yearick on 3 June 2002 for her signature. On 17 June 2002, Yearick informed Lane, the estate's accountant, and Rogers, that she opposed the payment of administrator commissions to Greene and Lane. She filed an "Objection to Payment of Executor's Commissions and Attorney's Fees" in Ashe County on 6 August 2002, seeking to have Greene and Lane removed as co-administrators of the estate.

On 20 January 2005, Yearick filed an amendment to her objection alleging (1) undue influence, (2) constructive fraud, and (3) breach of fiduciary duty. On 15 August 2006, Yearick filed a memorandum of facts and law in support of her objections. On or about 25 August 2006, Yearick presented to the Clerk a statement of twelve issues to be determined at a hearing on the matter. Greene filed a similar statement on 5 September 2006, listing nine issues. He also objected to Yearick attempting to bring before the court any issues other than the twelve listed in her statement.

**IN RE ESTATE OF SEVERT**

[194 N.C. App. 508 (2008)]

On 26 October 2006, Yearick filed a notice of withdrawal of her objections and asserted that the Ashe County Clerk of Superior Court had no jurisdiction to adjudicate the issues. She further asserted that she would raise the issues in Virginia. Also on 26 October 2006, Yearick filed an objection to a petition for approval of attorney's and accountant's fees, based upon the alleged lack of jurisdiction over the estate except as to ancillary matters. On 27 October 2006, Yearick filed a motion to recuse the clerk of superior court from hearing any further matters in the case. On 30 October 2006, Greene filed a brief in opposition to the motion to recuse. Also on 30 October 2006, Yearick filed a motion seeking to have the North Carolina domiciliary proceeding dismissed and the Virginia domiciliary proceeding given full faith and credit. The case was ordered to mediation on 1 November 2006. Nothing was resolved via mediation.

On 16 January 2007, Yearick, Severt, and Lane's law firm petitioned the court to allow the law firm to resign from representing the estate. Also on 16 January 2007, Yearick, Severt, and Lane petitioned the court to allow Lane to resign from representing the estate and from serving as a co-administrator. The 16 January petitions were calendared for hearing on 26 February 2007. On 12 February 2007, Greene petitioned the court to compel a final accounting or, in the alternative, to allow him to resign as co-administrator of the estate. Greene's petition also was calendared for hearing on 26 February 2007. On 20 February 2007, Yearick sought to limit the 26 February 2007 hearing to the jurisdictional issue raised by her 30 October 2006 motion, and requested that all motions be held in abeyance until such time as the issue of jurisdiction was resolved. The 16 January 2007 motions were granted by orders filed 26 February 2007.

Yearick's motion to dismiss was denied in open court on 26 February 2007, and by order filed 14 March 2007. Yearick filed timely notice of appeal with the superior court assigning error to twelve of the clerk's findings of fact, and ten of the clerk's conclusions of law. On 31 August 2007, the trial court reversed the clerk's order, and remanded the case for the purpose of finalizing the administration of the estate not inconsistent with its order. Greene appeals.

Greene first argues that the superior court exceeded its authority as an appellate court. We agree.

North Carolina General Statutes, section 1-301.3 sets forth the standard of review when appeal is taken of a clerk's order in probate matters.

Upon appeal, the judge of the superior court shall review the order or judgment of the clerk for the purpose of determining *only the following*:

(1) Whether the findings of fact are supported by the evidence.

(2) Whether the conclusions of law are supported by the findings of facts.

(3) Whether the order or judgment is consistent with the conclusions of law and applicable law.

N.C. Gen. Stat. § 1-301.3(d) (2007) (emphasis added). However, the superior court "only reviews those 'findings of fact *which the appellant has properly challenged by specific exceptions.*' " *In re Estate of Whitaker*, 179 N.C. App. 375, 382, 633 S.E.2d 849, 854 (2006) (citations omitted) (emphasis in original).

In the instant case, Yearick assigned error to twelve of the clerk's findings of fact. Rather than determining whether these twelve findings of fact were supported by the evidence, the superior court made its own findings of fact. Although some of the superior court's findings of fact were essentially the same as those of the clerk's unchallenged findings of fact, others re-characterized the findings made by the clerk. For example, in the clerk's order, finding of fact number 8, which had been challenged by Yearick, states:

On January 27, 1999, the Co-Administrators moved to convert [the] Virginia estate to a co-domiciliary estate. Virginia Circuit Court Judge Roy Willet entered an order, finding that [the] Ashe County, North Carolina, domiciliary administration was properly commenced and converting [the] Virginia administration from ancillary to domiciliary. The order did not find that Virginia was an exclusive domiciliary jurisdiction.

The corresponding finding of fact in the superior court's order states:

On January 27, 1999, the Virginia Circuit Court, after considering all the information before it, including the affidavits of all the North Carolina Co-Administrators, issued an Order that Virginia was the decedent's domicile at the time of his death. The Co-Administrators then were administered oaths as Co-Domiciliary Administrators and were qualified as the same on January 29, 1999.

There is no language in the superior court's order that tells this Court whether or not the clerk's findings of fact were supported by the evidence. Even if the superior court had made such a determination, our statutes make no provision for the trial court to make such a modification to the clerk's findings of fact. Here, the superior court appears to have ignored completely those findings of fact made by the clerk that were challenged by Yearick, and substituted its own in their place. In doing so, the trial court exceeded its statutorily proscribed standard of review.

This Court has thoroughly reviewed the over 1500 pages of evidence of record before it. Each of the twelve findings of fact to which Yearick objected that is contained in the clerk's order is supported by evidence included within the extensive record. The clerk's findings of fact in turn support the conclusion that the Ashe County Clerk has subject matter jurisdiction over the estate and all proceedings related to its administration.

Pursuant to North Carolina General Statutes, section 28A-2-1, "[t]he clerk of superior court of each county, *ex officio* judge of probate, shall have jurisdiction of the administration, settlement, and distribution of estates of decedents including, but not limited to, . . . [g]ranting of letters . . . of administration[.]" N.C. Gen. Stat. § 28A-2-1 (2007). The application and granting of letters of administration are governed by North Carolina General Statutes, section 28A-6-1, which requires that the applicant's affidavit must allege, *inter alia,* "[t]he name, *and to the extent known,* the domicile and the date and place of death of the decedent[,]" and "[i]f the decedent was not domiciled in this State at the time of his death, a schedule of his property located in this State, and the name and mailing address of his domiciliary personal representative, *or if there is none,* whether a proceeding to appoint one is pending." N.C. Gen. Stat. § 28A-6-1(a)(1), (6) (2007) (emphasis added). Here, the application for letters of administration disclosed that decedent was domiciled in either Ashe County, North Carolina or Roanoke, Virginia and that there were no probate proceedings pending in any other jurisdiction.

Once the clerk determines that the application and supporting evidence complies with statutory requirements, "he *shall* issue letters of administration . . . to the applicant" unless he determines the best interests of the estate would be served by delaying the appointment. N.C. Gen. Stat. § 28A-6-1(b) (2007) (emphasis added). The letters of administration issued in this case authorize the co-

administrators to "administer *all of the assets* belonging to the estate" (emphasis added).

> [I]t may be safely said in reference to granting letters . . . of administration, that if under any circumstances the court of probate could grant them, then it would have jurisdiction of the subject and its act is not void; if, on the contrary, in no possible state of things it could grant the letters, then are they void and conveyed no authority to any one to act under them.

*Hyman v. Gaskins*, 27 N.C. 267, 272-73 (1844). Here, the North Carolina letters of administration were valid when issued; thus, the Ashe County Clerk of Court had jurisdiction over the estate. Pursuant to the letters themselves, that jurisdiction was over "all of the assets belonging to the estate."

"[T]he letters . . . being granted by a court of competent authority and having jurisdiction, [are] binding . . . until duly and properly repealed." *Id.* at 275 (citation omitted). Once issued, letters of administration may be revoked pursuant to North Carolina General Statutes, section 28A-9-1. The statutory grounds for revocation are:

> (1) The person to whom they were issued was originally disqualified under the provisions of G.S. 28A-4-2 or has become disqualified since the issuance of letters.
>
> (2) The issuance of letters was obtained by false representation or mistake.
>
> (3) The person to whom they were issued has violated a fiduciary duty through default or misconduct in the execution of his office, other than acts specified in G.S. 28A-9-2.
>
> (4) The person to whom they were issued has a private interest, whether direct or indirect, that might tend to hinder or be adverse to a fair and proper administration. The relationship upon which the appointment was predicated shall not, in and of itself, constitute such an interest.

N.C. Gen. Stat. § 28A-9-1(a) (2007). Yearick failed to pursue these grounds to revoke Greene's letters of administration. Further, revocation of Greene's letters would not serve to change the manner of estate administration in this state because the remaining four letters of administration still would be in effect. Establishment of a domiciliary estate in another state is not among the grounds provided for

revoking letters of administration. In addition, the validity of letters of administration are not subject to collateral attack. N.C. Gen. Stat. § 28A-6-5 (2007).

As to the effect of the conversion of the Virginia estate from an ancillary proceeding to a domiciliary one,

Domicile is . . . a question of fact. Different courts may reach different conclusions with respect to this factual question. An express adjudication by the probate court of [another state] in a proceeding to probate in common form a paper as [a decedent's] will that she was a resident of that state would not be binding on the courts of this state. If that question be raised on an offer to probate in North Carolina, our court, on evidence presented to it, might reach a different factual conclusion without invading constitutional rights. Nor would comity compel us to accept a finding so made.

*In re Will of Marks*, 259 N.C. 326, 331, 130 S.E.2d 673, 676-77 (1963) (citations omitted). Although there was evidence that decedent was domiciled in Virginia, there also was evidence that he was domiciled in North Carolina: (1) he spent four to five days per week in the North Carolina residence; (2) he transacted most of his business in North Carolina; (3) litigation was centered in North Carolina; (4) his investments were primarily in North Carolina; (5) he regarded North Carolina as his "home"; (6) he was buried in North Carolina; and (7) he filed a tax return in North Carolina. As the duly issued letters of administration authorized the co-administrators to administer "all of the assets belonging to the estate," and the letters were never revoked, decedent's domicile is irrelevant.

Because the superior court exceeded the scope of the statutorily proscribed standard of review, and pursuant to that standard of review the clerk's order is without error, the order of the superior court is reversed.

Reversed.

Judges BRYANT and ARROWOOD concur.