BRYANT, Judge.
*404 As domicile is a question of fact, our review on appeal in this case concerns whether the trial court's findings of fact are supported by competent evidence, which in turn support the trial court's conclusions of law. Where the trial court's findings of fact were supported by competent evidence and supported its conclusions of law that petitioners had manifested an intent to permanently change their domicile from Raleigh, North Carolina to Naples, Florida on 20 January 2006, we affirm the trial court's order finding and concluding that the Department of Revenue acted beyond its legal authority in imposing 2006 and 2007 income and *405 gift taxes. Where the trial court found and concluded that the Department of Revenue was, based on the evidence, substantially justified in pursuing its claim against petitioners, we affirm the trial court's subsequent denial of petitioners' motion for attorneys' fees.
On 22 December 2011, petitioners Steve W. Fowler and Elizabeth P. Fowler ("petitioners") filed a petition for a contested case hearing in the Office of Administrative Hearings (OAH) against respondent North Carolina Department of Revenue (DOR). In the petition, petitioners contested the DOR's assessment of individual income tax for calendar years 2006 and 2007 and gift taxes assessed for calendar year 2006 on the grounds that they were not North Carolina residents and were not domiciled in North Carolina on or after 20 January 2006. The matter was heard 13-16 and 27-28 November 2012 before an Administrative Law Judge (the "ALJ").
In a decision entered 31 December 2012, the ALJ concluded that on 20 January 2006, petitioners abandoned their North Carolina residence and established their domicile in Florida. "The time Petitioners spent in North Carolina during the period of January 20, 2006 through the end of 2007 was for a temporary or transitory purpose...." In accordance with its conclusions, the ALJ reversed and vacated the Department of Revenue's tax assessments against petitioners: "Petitioners were not residents of North Carolina after January 19, 2006 through the end of 2007 and therefore not subject to North Carolina income or gift tax for that period...."
Pursuant to North Carolina General Statutes, section 150B-36, the ALJ's decision was reviewed by the DOR, the agency tasked with entering a final decision.[1]
*353 On 17 July 2014, the DOR entered a final agency decision. In pertinent part, the DOR identified the following as an issue:
[Whether petitioners met] their burden of proving a change in their North Carolina domicile by showing: (1) an actual abandonment of the first domicile, coupled with *406 an intention not to return to it; (2) the acquisition of a new domicile by actual residence at another place; and (3) the intent of making the newer residence a permanent home?
In its conclusions of law, the DOR concluded that "Petitioners' domicile from January 20, 2006 through the end of 2007 was North Carolina." "[That] [u]nder N.C. Gen.Stat. § 105-134.1(12), Petitioners were residents of North Carolina during 2006 and 2007 and were therefore subject to North Carolina income and gift taxes for those years." In accordance with its conclusions, the DOR's decision stated that "the [DOR] rejects the ALJ's Recommended Decision. The Notices of Final Determination dated October 27, 2011 issued to Petitioners by Respondent concerning individual income tax and gift tax assessments are sustained as to the tax, penalties, and interest, plus interest accruing, until paid in full."
Pursuant to General Statutes, sections 105-241.16 and 150B-43, petitioners filed a petition for judicial review of the final agency decision in Wake County Superior Court.
On 6 August 2014, after reviewing the record and hearing oral arguments, the Honorable James L. Gale, Special Superior Court Judge for Complex Business Cases, entered an order on the petition for judicial review of final decision in Wake County Superior Court. Judge Gale acknowledged that the question before the court was "whether Petitioners changed their domicile from North Carolina to Florida on or about January 20, 2006, exempting them from taxes arising from income received and gifts made in connection with the sale of [petitioner Steve] Fowler's majority interest in his company, which closed on February 3, 2006." Furthermore, the court noted respondent DOR's acknowledgement "that Petitioners ultimately intended to change their domicile to Florida at some point in the future, but that they had no intent to and did not abandon their domicile in North Carolina at a time that avoids the taxes in question."
The Superior Court concluded that "[the petitioners] intended to change and did change their domicile from North Carolina to Florida effective as of January 20, 2006, effecting an intent that preceded that date." "Respondent acted beyond its legal authority in imposing 2006 and 2007 income and gift taxes, together with penalties and interest on the Petitioners." In accordance with these conclusions, the court reversed the final agency decision of the DOR. The trial court then denied petitioners' request for attorneys' fees. DOR appeals. Petitioners cross-appeal on the denial of attorneys' fees.
*407 _________________________
On appeal, DOR argues that (I) the trial court misapplied the law of residency for tax purposes and (II) petitioners failed to present substantial evidence of abandonment of their North Carolina domicile. On cross-appeal, petitioners argue that (III) the record displayed no genuine foundation for the DOR to press its claim against petitioners and (IV) there were no special circumstances making an award of attorneys' fees unjust.
DOR's Appeal
The DOR argues that the trial court erred by misapplying the law of residency for tax purposes. We disagree.
"[General Statutes, Chapter 150B] establishes a uniform system of administrative rule making and adjudicatory procedures for agencies." N.C. Gen.Stat. § 150B-1(a) (2013). "The contested case provisions of [Chapter 150B] apply to all agencies and all proceedings...." Id. § 150B-1(e). A "contested case" is "an administrative proceeding pursuant to [Chapter 150B] to resolve a dispute between an agency and another person that involves the person's rights, duties, or privileges, including licensing or the levy of a monetary penalty." Id. § 150B-2(2).
[A] final decision in a contested case shall be made by the agency in writing after review of the official record ... and shall include findings of fact and conclusions of law. The agency shall adopt each finding of fact contained in the administrative law *354 judge's decision unless the finding is clearly contrary to the preponderance of the admissible evidence, giving due regard to the opportunity of the administrative law judge to evaluate the credibility of witnesses....
...
(b3) ... [T]he agency shall adopt the decision of the administrative law judge unless the agency demonstrates that the decision of the administrative law judge is clearly contrary to the preponderance of the admissible evidence in the record. If the agency does not adopt the administrative law judge's decision as its final decision, the agency shall set forth its reasoning for the final decision in light of the findings of fact and conclusions of law in the final decision, including any exercise of discretion by the agency.
N.C. Gen.Stat. § 150B-36(b), (b3) (2011).
*408 If, as here, petitioners seek judicial review of an agency decision that did not adopt the decision of the ALJ, the trial court's standard of review is governed by the parameters set forth in General Statutes, section 150B-51 :
[i]n reviewing a final decision in a contested case in which an administrative law judge made a decision ... and the agency does not adopt the administrative law judge's decision, the court shall review the official record, de novo, and shall make findings of fact and conclusions of law. In reviewing the case, the court shall not give deference to any prior decision made in the case and shall not be bound by the findings of fact or the conclusions of law contained in the agency's final decision. The court shall determine whether the petitioner is entitled to the relief sought in the petition, based upon its review of the official record. The court reviewing a final decision under this subsection may adopt the administrative law judge's decision; may adopt, reverse, or modify the agency's decision; may remand the case to the agency for further explanations under G.S. 150B-36(b1), 150B-36(b2), or 150B-36(b3), or reverse or modify the final decision for the agency's failure to provide the explanations; and may take any other action allowed by law.
Id. § 150B-51(c) (2011).[2]
Usually,
[w]hen the trial court exercises judicial review over an agency's final decision, it acts in the capacity of an appellate court. It is the traditional function of appellate courts to review the decisions of lower tribunals for errors of law or procedure, while generally deferring to the latter's unchallenged superiority to act as finders of fact.
N.C. Dep't of Env't & Natural Res. v. Carroll, 358 N.C. 649, 662, 599 S.E.2d 888, 896 (2004) (citations and quotation omitted). However, section 150B-51(c) "requires courts to engage in independent fact-finding *409 ... when the agency rejects the ALJ's decision." Id. at 663, 599 S.E.2d at 897 (citation omitted). When a trial court's decision is appealed to this Court, "[t]he scope of review to be applied by the appellate court under this section is the same as it is for other civil cases. In cases reviewed under G.S. 150B-51(c), the court's findings of fact shall be upheld if supported by substantial evidence." N.C. Gen.Stat. § 150B-52 (2011) ; see also Cape Med. Transp., Inc. v. N.C. Dep't of Health & Human Servs., 162 N.C.App. 14, 22, 590 S.E.2d 8, 14 (2004) ("Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion, even if contradictory evidence may exist. The substantial evidence test is a deferential standard of review." (citations and quotations omitted)).
This Court's scope of appellate review of a superior court order regarding a final agency decision is limited to examination of the trial court's order for error of law. "The process has been described as a twofold task: (1) determining whether the trial court exercised the appropriate scope of *355 review and, if appropriate, (2) deciding whether the court did so properly."
N.C. Forestry Ass'n v. N.C. Dep't of Env't & Natural Res., 162 N.C.App. 467, 475-76, 591 S.E.2d 549, 555 (2004) (citations and quotation omitted), overruled on other grounds by N.C. Dep't of Env't & Natural Res. v. Carroll, 358 N.C. 649, 599 S.E.2d 888 (2004).
The DOR contends the trial court misapplied the law for residency for tax purposes in concluding that petitioners satisfied their burden to prove a change of domicile on 20 January 2006. Specifically, the DOR argues that the question of domicile is a question of law. However, it is well-established by our Courts that domicile is a question of fact. See State v. Williams, 224 N.C. 183, 191, 29 S.E.2d 744, 749-50 (1944) ( "Domicile is a matter of fact and intention. In ordinary acceptation, it is the place where one lives or has his home. Two circumstances must concur in order to establish a domicile: first, residence, and secondly, the intention to make it a home, or to live there permanently, or, as some of the cases put it, indefinitely. To effect a change of domicile, therefore, the first domicile must be abandoned with no intention of returning to it, and actual residence taken up in another place coupled with the intention to remain there permanently or indefinitely." (citations omitted)); see also In re Estate of Severt, 194 N.C.App. 508, 515, 669 S.E.2d 886, 891 (2008) ("Domicile is ... a question of fact.") (quoting In re Will of Marks, 259 N.C. 326, 331, 130 S.E.2d 673, 676 (1963) (discussing in which state a testator's will could be properly probated, noting: "Domicile is, however, *410 a question of fact. Different courts may reach different conclusions with respect to this factual question.")). As such, we review the trial court's order under the substantial evidence test. Cape Med. Transp., Inc., 162 N.C.App. at 22, 590 S.E.2d at 14 (citation omitted).
"The general purpose of this Part [of our General Statutes designated Individual Income Tax] is to impose a tax for the use of the State government upon the taxable income collectible annually: (1) [o]f every resident of this State." N.C. Gen.Stat. § 105-134(1) (2006). Pursuant to General Statutes, section 105-134.1, a "resident" is defined as
[a]n individual who is domiciled in this State at any time during the taxable year or who resides in this State during the taxable year for other than a temporary or transitory purpose.... A resident who removes from the State during a taxable year is considered a resident until he has both established a definite domicile elsewhere and abandoned any domicile in this State.
Id. § 105-134.1(12). "Although a person may have more than one residence, he can only have one domicile. Domicile is a question of fact to be determined by the finder of fact." Atassi v. Atassi, 117 N.C.App. 506, 511, 451 S.E.2d 371, 374 (1995) (citations omitted).
Both petitioners and the DOR refer to Farnsworth v. Jones, 114 N.C.App. 182, 441 S.E.2d 597 (1994), as setting forth the general principles for the determination of whether a person has changed domicile. In Farnsworth, this Court addressed whether the plaintiff was a resident of a municipality such that the plaintiff was eligible as a candidate for election to a municipal office. In its discussion, the Farnsworth Court defined residence, as opposed to domicile, and applied a three-part test to differentiate these terms.
Precisely speaking, residence and domicile are not convertible terms. A person may have his residence in one place and his domicile in another. Residence simply indicates a person's actual place of abode, whether permanent or temporary. Domicile denotes one's permanent, established home as distinguished from a temporary, although actual, place of residence. When absent therefrom, it is the place to which he intends to return.... [I]t is the place where he intends to remain permanently, or for an indefinite length of time, or until some unexpected event shall occur to induce him to leave.
*411 ... Where someone retains his original home with all its incidental privileges and rights, there is no change in domicile.
Once an individual acquires a domicile, it is presumed to continue until a new domicile *356 is established. [T]he burden of proof rests upon the person who alleges a change. We apply a three-part test to differentiate between a residence and a domicile. To establish a change of domicile, a person must show: (1) an actual abandonment of the first domicile, coupled with an intention not to return to it; (2) the acquisition of new domicile by actual residence at another place; and (3) the intent of making the newer residence a permanent home. Although a person's testimony regarding his or her intent regarding the acquisition of a new domicile is competent evidence, it is not conclusive. We must consider the evidence of all the surrounding circumstances and the conduct of the person in determining whether he or she has effectuated a change in domicile.
Id. at 186-87, 441 S.E.2d at 600-01 (citations and quotation omitted).
We also note that the North Carolina Administrative Procedure Act includes a list of non-exclusive factors to be considered by the agency (here, DOR) in determining the legal residence or domicile of an individual for income tax purposes:
(1) Place of birth of the taxpayer, the taxpayer's spouse, and the taxpayer's children.
(2) Permanent residence of the taxpayer's parents.
(3) Family connections and close friends.
(4) Address used for federal tax returns, military purposes, passports, driver's license, vehicle registrations, insurance policies, professional licenses or certificates, subscriptions for newspapers, magazines, and other publications, and monthly statements for credit cards, utilities, bank accounts, loans, insurance, or any other bill or item that requires a response.
(5) Civic ties, such as church membership, club membership, or lodge membership.
(6) Professional ties, such as licensure by a licensing agency or membership in a business association.
*412 (7) Payment of state income taxes.
(8) Place of employment or, if self-employed, place where business is conducted.
(9) Location of healthcare providers, such as doctors, dentists, veterinarians, and pharmacists.
(10) Voter registration and ballots cast, whether in person or by absentee ballot.
(11) Occasional visits or spending one's leave "at home" if a member of the armed services.
(12) Ownership of a home, insuring a home as a primary residence, or deferring gain on the sale of a home as a primary residence.
(13) Location of pets.
(14) Attendance of the taxpayer or the taxpayer's children at State supported colleges or universities on a basis of residence-taking advantage of lower tuition fees.
(15) Location of activities for everyday "hometown" living, such as grocery shopping, haircuts, video rentals, dry cleaning, fueling vehicles, and automated banking transactions.
(16) Utility usage, including electricity, gas, telecommunications, and cable television.
17 N.C.A.C. 6B.3901 (2011). These factors were considered by the ALJ as well as the DOR in their respective evaluations of petitioners' case.
Here, the facts underlying the trial court's determination that petitioners changed their domicile from North Carolina to Florida on 20 January 2006 are not substantially disputed. In its order, the trial court made the following findings of fact:
{25} Petitioners are a married couple who were domiciled in North Carolina at least until January 19, 2006, and for their entire lives before that date. They filed North Carolina tax returns for the 2005 tax year and for each year prior to 2005, but have asserted that they were non-residents during the 2006 and 2007 tax years.
...
*357 *413 B. Events prior to January 20, 2006
{26} In 1984, Mr. Fowler founded Commercial Grading, Inc. ("Commercial Grading"), a North Carolina company, which did business as "Fowler Contracting." Mr. Fowler devoted his time and effort to building Commercial Grading into a highly successful enterprise. He held the controlling majority interest in the company. Mrs. Fowler also worked at the company and dedicated substantial effort on its behalf.
{27} Petitioners began considering Florida as a potential retirement location as early as the 1990's.
...
{28} Over several years, Petitioners visited numerous cities in Florida in search of real estate. In 2002, they purchased a three-bedroom, 3,400 square-foot house in Naples (the "Tiburon House") for approximately $1.6 million. In 2003, in connection with the move to their new Old Stage Road residence [in Raleigh, NC], Petitioners moved furniture to the Tiburon House, including some family heirlooms and valued furniture. At this time, the Tiburon House was Petitioners' secondary residence, which they did not consider their true, fixed permanent home and principal establishment to which they intended to return when absent.
{29} In 2004, Mr. Fowler was diagnosed with kidney cancer and underwent surgery to remove his kidney. Petitioners accelerated their efforts to sell Commercial Grading and retire to Florida.
{30} In January 2005, Petitioners formed Fowler Aviation, Inc., a Florida company, to sell a new type of private jet. They invested $1.775 million in the venture, but the money was fully refunded in 2006 when the FAA would not certify the jet for production and sale.
{31} In early 2005, Petitioners engaged an investment-banking firm to solicit buyers for Commercial Grading.... In October 2005, Mr. Fowler signed a preliminary letter of intent ("Letter of Intent") with a private equity firm, Long Point Capital, to sell a majority of his shares in Commercial Grading.... Mr. Fowler was further expected to remain the company's President, and Mrs. Fowler was *414 also expected to remain with the company for a period after the sale.
{32} After signing the Letter of Intent, Petitioners told various other acquaintances in both Florida and North Carolina of their intent to move to Florida.
{33} Also, shortly after signing this Letter of Intent, Petitioners contracted to buy a four-bedroom, 9,300 square-foot house in Naples, Florida ("the Quail West House"), while retaining the Tiburon House. They closed on their purchase in August 2006, but later sold the Quail West House in April 2009 without having lived in it.
{34} In late 2005, Petitioners consulted their accountant, Graham Clements, to determine how to accomplish a change of domicile to Florida.... Mr. Clements advised Petitioners to change their domicile to Florida after January 1, 2006, but before the close of the sale to Long Point, which would be a taxable event. To effect the transfer, Mr. Clements advised Petitioners to own a home in Florida, hire a Florida attorney, file a Declaration of Domicile in Florida, spend at least 183 days in Florida, and take some "official action," such as changing their driver's licenses and registering to vote.
{35} Also in late 2005, Mr. Fowler sought assistance from William Graef, a friend who owned an aviation company, for the purpose of buying, maintaining, and storing a private airplane. Petitioners contracted in early 2006 to purchase a plane from Mr. Graef for approximately $19.2 million. Petitioners and Mr. Graef unsuccessfully attempted to locate suitable hangar space with necessary services in Naples. They continued to charter private planes from Raleigh until the plane was delivered in Raleigh on October 2007, where it was registered and then stored. During this period, the predominant portion of the Fowlers' various travels were on flights originating in and returning to Raleigh.
{36} Lynnwood Mallard was Petitioners' counsel in connection with the sale of Commercial Grading. Mr. Mallard advised Mr. *358 Fowler that Long Point would require Petitioners to continue working for Commercial Grading after the sale. The length and nature of the requirement *415 became a significant point in negotiations for a sales agreement. Mr. Mallard obtained assurances that Mr. Fowler's work need not necessarily be on-site in North Carolina.
{37} On January 19, 2006, Petitioners signed the binding Securities Purchase Agreement for the sale of the majority interest in Commercial Grading. This event did not trigger taxes arising from the actual sale, which was set to occur in early February.
C. Efforts on January 20, 2006
{38} On January 20, 2006, the Fowlers left for Naples, Florida, on a chartered plane for the purpose of taking "official action" to evidence their change of domicile. They tried but could not complete certain efforts on this trip because they left certain necessary papers in North Carolina. At the driver's license office, Petitioners presented their North Carolina licenses and asked for Florida driver's licenses, but were denied for lack of additional identification. They attempted but were unable to register to vote for the same reason. At this time, Petitioners had one of their several automobiles in Florida. They registered that single car in Florida, but signed the registration form as non-residents, listing their North Carolina address. Petitioners also unsuccessfully attempted to obtain a post office box and register their dog on January 20, 2006.
{39} Petitioners stayed at the Tiburon House on this trip, which they contend had then become their true, fixed permanent home and principal establishment to which they intended to return when absent.
{40} On or about January 22, 2006, Petitioners returned to their Old Stage Road home, which they contend had then become their secondary home where they would reside on a temporary and transitory basis until and for the purpose of completing their ongoing obligations assumed under the sales transaction.
D. Events Following the Sale of Commercial Grading, Including Continuing North Carolina Ties
{41} On February 3, 2006, Petitioners closed the sale of their majority interest in Commercial Grading to Long Point Capital for $106 million....
*416 {42} Mr. Fowler signed an Employment Agreement with Long Point on February 3, 2006, pursuant to which he was employed as President for a term of three years and responsible for managing day-to-day operations of the company. He remained employed until February 3, 2009. Mrs. Fowler also signed a three-year Employment Agreement on February 3, 2006, as Assistant Secretary, and remained employed until February 3, 2009. Efforts to hire a president to replace Mr. Fowler and assume his responsibilities earlier than his contract's expiration were unsuccessful.
...
{43} Mrs. Fowler also made significant charitable contributions [to her late father's church] in North Carolina after February 3, 2006....
{44} Petitioners returned to Florida on March 10, 2006, and successfully completed the matters that they were unable to complete on their January 20, 2006, trip. They signed and filed a Declaration of Domicile in Florida. They obtained a Naples post office box and Florida driver's licenses, and they registered to vote. They have since voted in person in Florida elections. In August 2006, Petitioners advised the Wake County Board of Elections to remove them from the voting rolls of Wake County. They have not voted in North Carolina since January 20, 2006.
{45} In spring 2006, Petitioners hired Cooper Pulliam, an investment advisor in Atlanta, Georgia, to buy municipal bonds. Based on his understanding that Petitioners were Florida residents, Mr. Pulliam purchased a portfolio of municipal bonds from across the country....
{46} Petitioners traveled extensively after the sale, often to locations outside of either North Carolina or Florida. They spent substantial time in Myrtle Beach, South Carolina. Counting days, the Fowlers *359 spent the most days in North Carolina in 2006 and 2007. Mr. Fowler testified that they did so because his duties as President required "face-to-face" meetings and "riding the jobs." In 2006, Mr. Fowler spent 162 and 51 days in North Carolina and Florida respectively. In 2007 he spent 168 and 27 days in North Carolina and Florida respectively. In 2006, Mrs. Fowler spent 173 *417 and 47 days in North Carolina and Florida respectively. In 2007, she spent 180 and 27 days in North Carolina and Florida respectively. Neither Mr. Fowler nor Mrs. Fowler spent 183 days in North Carolina in either 2006 or 2007.
{47} When in Raleigh, Petitioners stayed at their Old Stage Road home. They returned to their home in Naples on several occasions throughout 2006 and 2007.
{48} Petitioners did not list their Old Stage Road house for sale in 2006 ... [due to] the declining real estate market. Ultimately, Petitioners listed the house on December 1, 2010, at $7.9 million.
{49} Petitioners used their Florida address on their North Carolina Individual Income Tax Returns filed in April 2006 and thereafter. Mrs. Fowler continued to use her North Carolina address on her Privilege License Tax Returns from 2006 through 2010, although the checks Mrs. Fowler used to pay the taxes due on her Privilege License Tax Returns displayed her Florida address. Mrs. Fowler retained her North Carolina real estate license and received referral fees for properties in South Carolina and Florida, but never for property sold in North Carolina. During 2006 and 2007, Mrs. Fowler completed her continuing education requirements in North Carolina. Mrs. Fowler did not obtain a Florida real estate license.
{50} Throughout 2006, the Fowlers changed their address from North Carolina to Florida with various businesses. However, throughout 2006 and 2007, they also continued to use the Old Stage Road address in Raleigh for certain correspondence and billing, and on K-1s, 1099s, bills, and bank statements.
{51} In 2006 and 2007, Mrs. Fowler went to church in both Naples and Raleigh. While she indicates that she contributed to churches in Naples, the record reflects much more significant giving in North Carolina during this period.... During 2006 and 2007, Petitioners further donated to numerous other North Carolina charitable organizations.
{52} In 2006 and 2007, Petitioners were members of the Tiburon Club and the Quail West Club in Florida, but of no club in North Carolina....
*418 {53} In 2006, Mr. Fowler used doctors in North Carolina and Massachusetts. In 2007, he used doctors in North Carolina, Massachusetts, and Florida. The majority of Petitioners' 2006 and 2007 medical expenses were for treatment at a Massachusetts facility associated with the Cleveland Clinic.
{54} In 2006 and 2007, the Fowlers did everyday "hometown" activities wherever they were.
{55} In 2006, the Fowlers hired Florida counsel to create their first estate plan. In 2006 and 2007, Mr. Fowler obtained legal services from at least two North Carolina firms.
{56} In 2006 and 2007, Mr. Fowler served as the registered agent for several North Carolina business entities.... Mr. Fowler used his Florida address when organizing these companies.
{57} Petitioners bought a homeowners insurance policy for their home at 7801 Old Stage Road in Raleigh for the period of July 31, 2006, through July 31, 2007. The policy included the stipulation that "The described dwelling is not seasonal or secondary." ... They did not insure their Florida property.
{58} The Fowlers donated to candidates running for office in North Carolina but did not contribute to Florida candidates. Mr. Fowler testified that each contribution was tied to candidates whose efforts benefitted business holdings.
The trial court then made the following conclusions of law[3] :
*360 {59} Based on the above findings of fact, applying the governing legal principles, the court makes the following conclusions of law:
*419 {60} The Fowlers can have but one domicile. The Fowlers intended to change and did change their domicile from North Carolina to Florida effective as of January 20, 2006, effecting an intent that preceded that date.
{61} The Fowlers took adequate voluntary and positive actions in Florida on January 20, 2006 to establish their new domicile. These intentional, voluntary, and positive actions were adequate, even though the Fowlers did not complete certain activities until the return trip on March 10, 2006.
{62} On January 20, 2006, the Fowlers were present in Florida and intended to return there whenever absent thereafter. They owned and lived in the Tiberon House, a true, fixed permanent home and principal establishment to which they intended to return when absent.
{63} On and after January 20, 2006, the Fowlers were North Carolina non-residents. On that date, they intended their home at Old Stage Road in Raleigh, North Carolina, to be their secondary home that they would no longer maintain as their permanent home. After January 20, 2006, they used this property as a temporary residence for the completion of temporary and transitory contractual obligations undertaken in connection with the sale of the majority interest in Commercial Grading.
{64} On January 20, 2006, the Fowlers intended to abandon and did abandon North Carolina as their domicile.
{65} The Fowlers were not required to remove all of their possessions and sever all ties with North Carolina to effect a change in domicile. Hall [v. Wake Cnty. Bd. of Elections ], 280 N.C. [600,] 610-11, 187 S.E.2d [52,] 58 [ (1972) ].
{66} The Fowlers' intent to change domicile was not improper or rendered ineffective because the change was timed to maximize tax savings. Additionally, Mr. Fowler's unexpected medical condition accelerated the need to carry out a preexisting future intent for this change in domicile.
{67} Conversely, the Fowlers were not in Florida for a temporary or transitory purpose on and after January 20, 2006.
*420 {68} Continued investments through the North Carolina Wachovia account, charitable and political contributions, maintaining personal property in North Carolina, and various other actions concerning North Carolina do not negate that Petitioners abandoned North Carolina as a domicile.
{69} This case must be considered on its own unique facts. Facts here are distinguishable from cases where activities in the claimed new domicile were temporary or transitory. See, e.g., Farnsworth, 114 N.C.App. at 188, 441 S.E.2d at 602. The decision in Mauer v. Commissioner of Revenue, 829 N.W.2d 59, 75 (Minn.2013), is unpersuasive because its facts are distinct.
{70} Any attempt to weigh the non-exclusive list of sixteen (16) factors in 17 N.C. Admin. Code 6B.3901(b) does not lead to a necessary finding that the Fowlers failed to abandon their domicile in North Carolina on January 20, 2006. Under the facts of this case, four of the sixteen factors favor a North Carolina domicile (1, 3, 6 & 9), one favors a Florida domicile (10), six are neutral (4, 5, 12, 13, 15 & 16), two are beyond Petitioners' control (2 & 8), and three are inapplicable (7, 11, & 14).
{71} The Fowlers have satisfied the three-part test for change of domicile established in Farnsworth.
{72} Petitioners have satisfied their burden to prove a change of domicile to Florida as of January 20, 2006.
*361 Given the advice of their accountant regarding the establishment of a new domicile prior to the sale of Commercial Grading, a binding Securities Purchase Agreement to sell Commercial Grading signed 19 January 2006 scheduling a sale in early February 2006, and petitioners' actions on 20 January 2006 in Naples, Florida (attempting to acquire Florida driver's licenses, attempting to register to vote, attempting to acquire a post-office box, attempting to register their dog, and registering one vehicle, albeit as non-residents), it is clear that petitioners were acting based on their intent to change their domicile to Florida. However, the question before us is whether the trial court erred in ruling that petitioners effected a change of domicile on 20 January 2006. We hold that, based on the substantial evidence before the trial court which supports its findings of fact and subsequent conclusions of law, the court did not err in its ruling.
*421 We emphasize our scope of review is to determine, first, whether the trial court exercised the appropriate scope of review and, secondly, to determine whether it did so properly. Pursuant to N.C.G.S. § 150B-36, the trial court conducted a de novo review of the record and made independent findings of fact and conclusions of law. The trial court's findings of fact and, in turn, its conclusions of law, were supported by evidence in the record, even though the record contained evidence that could have led to contrary findings of fact and conclusions of law. Therefore, in accordance with our standard of review, and upon our examination of the order of the trial court, we find no error in the conclusion that on 20 January 2006, petitioners abandoned their domicile in Raleigh with the intention of making the Tiburon House in Naples, Florida, their permanent home, thereby effecting a change in domicile. See Atassi, 117 N.C.App. at 511, 451 S.E.2d at 374 ("[A] person may have more than one residence [but] can only have one domicile." (citation omitted)). As there was sufficient evidence to support the trial court's findings of fact and conclusions of law that petitioners effected a change in domicile to Florida, DOR's additional argument that petitioners failed to meet their burden of demonstrating a change in domicile need not be further addressed. Therefore, we affirm the order of the trial court concluding that DOR acted beyond its legal authority in imposing 2006 and 2007 income and gift taxes.
Petitioners' Cross-Appeal
On cross-appeal, petitioners contend the trial court erred in failing to grant their motion for attorneys' fees. We disagree.
Pursuant to North Carolina General Statutes, chapter 6-19.1,
(a) In any civil action, ... unless the prevailing party is the State, the court may, in its discretion, allow the prevailing party to recover reasonable attorney's fees, including attorney's fees applicable to the administrative review portion of the case, in contested cases arising under Article 3 of Chapter 150B, to be taxed as court costs against the appropriate agency if:
(1) The court finds that the agency acted without substantial justification in pressing its claim against the party; and
(2) The court finds that there are no special circumstances that would make the award of attorney's fees unjust.
*422 N.C. Gen.Stat. § 6-19.1(a) (2014) (emphasis added). "However, if the trial court determines that the State agency did not act 'without substantial justification,' or that some special circumstances do exist which make an award of attorney's fees unjust, then the trial court lacks discretion, and cannot award attorney's fees." High Rock Lake Partners, LLC v. N.C. DOT, ---N.C.App. ----, ----, 760 S.E.2d 750, 753 (2014).
In its conclusions of law, the trial court noted that although DOR "acted beyond its legal authority in imposing 2006 and 2007 income and gift taxes" on petitioners, DOR acted with substantial justification in bringing its claim against petitioners:
{73} Petitioners are not entitled to attorneys' fees.
{74} The Department correctly recognized that a change of domicile must be determined from the totality of circumstances, and that a taxpayer claiming a change in domicile has the burden of proving such change by demonstrating both intent to *362 establish a new domicile and to abandon the old one. The court, after a thorough and careful review of the record, has accepted and found that the Fowlers' presence in North Carolina after January 20, 2006, was as non-residents for temporary and transitory purposes. However, the record provided the Department with a substantial and reasonable basis to pursue its position that the Fowlers had not actually abandoned their domicile in North Carolina in 2006 or 2007.
{75} The Department had substantial justification in pressing its claim against Petitioners.
{76} The Department did not act without justification by failing to "score" each of the various factors leading to its decision.
{77} An award of attorneys' fees against Respondent on the facts of this case would be unjust.
Petitioners contend the trial court erred as a matter of law in ruling that DOR "was substantially justified and that an award of attorney's fees would be unjust." Petitioners' argument is without merit.
We agree with the trial court's conclusion of law that DOR's decision to pursue its claim against petitioners was substantially justified, as while petitioners presented evidence that they intended to, and eventually did, fully move themselves and their belongings to Florida, there *423 was also evidence to support DOR's contention that petitioners did not effectuate a change in domicile to Florida until sometime after 2007. Indeed, the trial court's order reflects the often conflicting evidence presented as to whether petitioners had in fact changed their domicile on 20 January 2006, including, inter alia, findings of fact that petitioners registered one of their cars in Florida on 20 January 2006 but did so by registering as non-residents; petitioners continued to maintain their Raleigh residence and insured it as a primary, rather than secondary, home; petitioners "made significant financial contributions in North Carolina after February 3, 2006" to churches and political candidates; petitioners continued to maintain North Carolina-based banking accounts; petitioners used their Raleigh residence's address for "certain correspondence and billing"; and Mr. Fowler served as a registered agent for several North Carolina-based businesses in 2007. As this evidence and findings of fact can be said to support DOR's contention that petitioners did not change domicile on 20 January 2006, the trial court's ruling that DOR was substantially justified in pursuing its claim against petitioners and, therefore, petitioners' motion for attorneys' fees should be denied, was proper. See id.
Accordingly, we affirm the order of the trial court concluding that DOR acted beyond its legal authority in imposing 2006 and 2007 income and gift taxes against petitioners and denying petitioners' motion for attorneys' fees.
AFFIRMED.
Judges DAVIS and INMAN concur.

In 2011, our General Assembly made significant changes to the Administrative Procedure Act codified within Chapter 150B of our General Statutes, including a repeal of N.C. Gen.Stat. § 150B-36. Pursuant to Session Law 2011-398, the repeal of N.C.G.S. § 150B-36 was effective 1 January 2012 and was applicable to contested cases commenced on or after that date. Act of July 25, 2011, Ch. 398, §§ 20, 63, 2011 N.C. Sess. 20. However, as this case was commenced on 22 December 2011, prior to the effective date of these statutory changes, N.C.G.S. § 150B-36 is applicable to this case.

"This subsection requires courts to engage in independent fact-finding but only when the agency rejects the ALJ's decision. It does not redefine the 'de novo ' standard governing judicial review over questions of law." N.C. Dep't of Env't & Natural Res. v. Carroll, 358 N.C. 649, 663, 599 S.E.2d 888, 897 (2004) (citations omitted).

We note that the trial court mischaracterized some of its conclusions of law as findings of fact. However, this mischaracterization does not affect our review of the trial court's order. See Hastings v. E. Carolina Pathology Assocs., No. COA04-994, 2005 WL 1949884, at *3 (N.C.App. August 16, 2005) (unpublished) ("We reject [the] ... characterization of the findings stated above as 'conclusions of law.' The Commission was not applying any legal standard to the evidence, but rather was evaluating the credibility of each physician's testimony under the circumstances. Accordingly, we now determine whether competent evidence exists to support these challenged findings.").